IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**MARK ESPARSEN,**

    **Plaintiff,**

vs.

                            **No. CIV-00-0589 BB/RLP**

**CITY OF BELEN, and LAWRENCE
ROMERO, GILBERT ZAMORA,
and NEPHY VALDEZ, individually
and in their official capacities,**

    **Defendants.**

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the court on Defendants' motion to dismiss Count II of Plaintiff's complaint (Doc. 27). The court has reviewed the parties' submissions and the relevant authorities. The Court finds that, while Plaintiff has failed to state a viable RICO claim at this point, he should be given an opportunity to amend his complaint if he has adduced sufficient facts in discovery to support such a claim.

I.    BACKGROUND

Plaintiff filed his complaint on April 26, 2000. In Count Two of the Complaint, Plaintiff claims that Defendants engaged in a pattern of conspiring, promoting, aiding and covering up illegal activities by members of the Belen Police Department ("BPD") in violation of the Racketeer Influenced and Corrupt Organization Act (RICO), 18 U.S.C. §§ 1961-1968 (1994 & Supp. IV 1998). Defendants City of Belen, Lawrence Romero, and Nephey Valdez[1] have moved

---

[1] Plaintiff spells this Defendant's name as "Nephy" Valdez, while Defendants spell it "Nephey." On the assumption that Defendants' counsel would be more familiar with the spelling of their own client's name, the Court uses this spelling.

to dismiss Count II with prejudice pursuant to Fed. R. Civ. P. 12(b)(6), for failure to state a claim upon which relief can be granted. In addition, Defendant Gilbert Zamora has adopted the other Defendants' motion by reference.

Plaintiff alleges that in January of 1997, the BPD hired him as a Patrol Officer. The BPD promoted Plaintiff to detective in April of 1997 when Plaintiff began working in narcotics investigations. In the course of his investigations, Plaintiff alleges that he discovered that some members of the BPD pursued certain persons suspected of dealing drugs more aggressively than others and permitted certain persons to sell and distribute drugs. Plaintiff further alleges that some members of the BPD telephoned suspected drug dealers prior to scheduled raids and arrests informing them of the scheduled raid or arrest.

Plaintiff contends that after he reported the aforementioned discoveries to his superiors and to the Mayor of Belen, Defendant Zamora reassigned Plaintiff from his day shift on narcotics to a night shift on burglary. Plaintiff further alleges that he was ordered to work without a partner and that he received no assistance from other officers when necessary. Plaintiff contends that his life and security were in jeopardy as a result of the lack of assistance and lack of support by other officers.

In the winter of 1997, Plaintiff alleges that he discovered a member of the BPD had sexually assaulted a female police officer. Plaintiff met with Agent Langenburg of the Federal Bureau of Investigation (FBI) and informed him about the sexual assault incident and the other issues he discovered involving civil rights violations at the BPD. Agent Langenburg informed Plaintiff that he would begin investigating the sexual assault incident. Plaintiff alleges that United States Department of Justice informed the BPD that Plaintiff would be interviewed.

Plaintiff contends that after he met with Agent Langenburg, Defendants Valdez and Zamora began threatening Plaintiff with physical violence and threatened that he would lose his

job.  Plaintiff alleges that he informed Defendant Romero, Chief of the BPD, about the threats, but that the threats and intimidation from Defendants Valdez and Zamora intensified.

Plaintiff alleges that in January of 1998 Defendants Valdez and Zamora physically assaulted Plaintiff by kicking him and throwing him to the ground.  After the incident Plaintiff attempted to leave the police station and Defendant Zamora threatened him with disciplinary action.  Defendant Zamora admits that he told Plaintiff that Plaintiff could be disciplined if he left the police station, but denies that he physically assaulted Plaintiff.  Upon the advice of Tim Frasier of the BPD, and in order to avoid a cover-up by the BPD, Plaintiff reported the January 1998 incident to the Valencia County Sheriff's Department and contacted Agent Langenburg.

The day after filing the report, Plaintiff met with Defendant Romero.  During the meeting, Plaintiff alleges that Defendant Romero was upset that Plaintiff contacted outside agencies about the incidents.  Plaintiff then reminded Defendant Romero of his earlier complaint and that the BPD had taken no action.  Defendant Romero indicated he would investigate the matter personally and would meet with Plaintiff the following day.

The following afternoon, Defendant Romero canceled the meeting and left instructions for Plaintiff to leave his vehicle and identification at the station.  Plaintiff called his wife to pick him up.  Plaintiff alleges that Defendant Zamora then threatened Plaintiff, ordering him to leave his keys.  Plaintiff also contends that Defendant Zamora began yelling at Plaintiff in front of Plaintiff's wife and small child when Plaintiff explained that Defendant Romero had not instructed him to turn in his keys.

Plaintiff alleges that Defendant Zamora and other BPD officers came to his residence on two separate occasions and harassed Plaintiff and his family.  Plaintiff further alleges that his wife and child found a large rat on the entryway of Plaintiff's residence.  Plaintiff contends that he was forced to resign from the BPD because he feared for his safety and that of his family.

Defendants Valdez, Romero, and City of Belen deny that any of the Defendants harassed Plaintiff, and claim that Plaintiff voluntarily resigned from his employment following the imposition of a suspension resulting from an altercation with Defendant Valdez. Defendant Valdez admits that he and Plaintiff were involved in a physical altercation, but asserts that the altercation was due to a work disagreement. Assuming the truth of the above facts, all Defendants have moved for dismissal of Count II with prejudice.

II.     DISCUSSION

    A.     Standard of Review

In deciding a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the court must accept all well-pleaded allegations in the complaint as true and construe them in the light most favorable to the non-moving party. GFF Corp. v. Associated Wholesale Grocers, Inc., 130 F.3d 1381, 1384 (10th Cir. 1997). Dismissal may be granted only when "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Id. (citing Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). The function of the court on a 12(b)(6) motion is "not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." Miller v. Glanz, 948 F.2d 1562, 1565 (10th Cir. 1991). The plaintiff carries the burden of alleging sufficient facts, but need not plead every fact in specific detail. Hall v. Bellmon, 935 F.3d 1106, 1110 (10th Cir. 1991) (citing Conley, 355 U.S. at 47). However, "conclusory allegations without supporting factual averments are insufficient to state a claim..." Hall, 935 F.3d at 1110 (citing Dunn v. White, 880 F.2d 1188, 1197 (10th Cir. 1989), cert denied, 493 U.S. 1059 (1990)).

B.	Sufficiency of Count II of the Complaint under 12(b)(6)

Defendants argue that Plaintiff has failed to state a claim under RICO, 18 U.S.C. §§ 1961-1968 (1994 & Supp. IV 1998). Congress enacted RICO to counter organized crime activity in this country by providing harsh penalties for organized racketeering. Beck v. Prupis, 120 S.Ct. 1608, 1611 (2000). Congressional intent indicates that RICO should be liberally construed. Holmes v. Securities Investor Prot. Corp., 503 U.S. 258, 274 (1992).

Plaintiff claims that Defendants have violated RICO. Although Plaintiff did not allege violation of a specific subsection of RICO, based on the allegations in Plaintiff's Complaint, this Court assumes Plaintiff brings his complaint under RICO §1962(c) and § 1962(d).[2] These subsections provide in pertinent part:

> (c) It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.
>
> (d) It shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section.

In order to state a cause of action under the RICO statute, Plaintiff must allege facts sufficient to show that 1) defendant[s] participated in conduct; 2) of an enterprise; 3) through a pattern; 4) of racketeering activity. Phelps v. Wichita Eagle Beacon, 886 F.2d 1262, 1273 (10th Cir. 1989) (citing Sedima, S.P.R.L. v Imrex Co., 473 U.S. 479, 496 (1985)). In addition, to state

---

[2]The first two subsections concern use of the income from a racketeering activity and obtaining control of an enterprise through racketeering activity. None of the allegations in Plaintiff's complaint have anything to do with this type of conduct.

5

a civil cause of action, Plaintiff must establish that he has suffered an injury under 18 U.S.C. § 1964(c) (1994 & Supp. IV 1998).

Each of the aforementioned five elements must be sufficiently pled to state a cause of action under RICO. However, contrary to Defendants' contention that "Plaintiff has critical and specific pleading burdens," Plaintiff is not required to plead his RICO claim with the specificity Defendants demand. Plaintiff's RICO claims are not based on predicate acts of fraud; if they were, the heightened pleading standards required by Fed. R. Civ. P. 9(b) would apply. *See, e.g., Goren v. New Vision Int'l Inc.*, 156 F.3d 721, 726 (7th Cir. 1998). Absent allegations of fraud, however, Plaintiff need not supply the "actual names, dates, events, agreements, or details of the alleged criminal acts" as argued by Defendants. Plaintiff need only provide a clear statement of facts under Fed R. Civ. P. 8(a), with sufficient information to give the defendant notice under Rule 8(a)(2).

1. Standing under 18 U.S.C. § 1964(c)

Although Defendants challenge the sufficiency of Plaintiff's allegations under each element of RICO, a threshold issue is whether Plaintiff has sustained an injury sufficient to warrant standing under § 1964(c) . RICO provides a civil cause of action only for a person "injured in his business or property by reason of a violation of Section 1962..." § 1964(c). The plaintiff must be "injured by reason of a RICO violation." Holmes, 503 U.S. at 265; Sedima, 473 U.S. at 496 ("[P]laintiff only has standing if, and can only recover to the extent that, he has been injured...by the conduct constituting the violation"). Further, the injury must be proximately caused by a violation of § 1962. Holmes, 503 U.S. at 267-68. The proximate cause requirement may be met when "the RICO pattern or acts...are a substantial factor in the sequence of responsible causation, and if the injury is reasonably foreseeable or anticipated as a natural consequence." *Hecht v.*

*Commerce Clearing House, Inc.*, 897 F.2d 21, 23-24 (2nd Cir. 1990).  In sum, whether Plaintiff is alleging direct racketeering activity under § 1962(c) or a racketeering conspiracy under § 1962(d), he must be able to show that his injuries were directly caused by an act which itself constitutes racketeering activity, rather than simply an act performed to benefit the racketeering enterprise.  *See Beck v. Prupis, supra*, 120 S.Ct. at 1616 (RICO conspiracy plaintiff was not injured by a predicate act that itself constituted a racketeering activity; therefore, plaintiff did not have cause of action under RICO); *Hecht* (plaintiff allegedly lost customers due to racketeering activities of defendants; consequent loss of commissions was not direct result of racketeering activities, even though caused in fact by those activities; therefore, plaintiff lacked standing to bring civil RICO claim).

The injuries alleged by Plaintiff in this case appear to include the following:  (1) his resignation from the BPD due to fear for the safety of his family; (2) being denied proper backup and support by members of the BPD; (3) being threatened with physical violence by Defendants Valdez and Zamora; (4) being physically attacked by Defendants Valdez and Zamora; and (5) being harassed and threatened at his residence by Zamora and other members of the BPD.  Each of these claimed injuries must be examined to determine whether it might be the direct result of an act prohibited by RICO.  For that reason, the Court must review the complaint to determine what predicate RICO acts Plaintiff has alleged.  The acts complained of include acts by certain Defendants aiding and abetting the distribution of controlled substances by drug dealers in an around Belen; a sexual assault on a female officer by one Defendant; threats that Plaintiff would lose his job; threats of physical violence against Plaintiff; a physical assault upon Plaintiff; a disciplinary incident at work; and acts of harassment with accompanying implied threats of violence, at Plaintiff's home.

Of the above actions, some are clear acts which, if proven, would constitute racketeering activity as defined by 18 U.S.C. § 1961(1).  For example, Defendants' alleged participation in the distribution of controlled substances is listed as such an activity.  However, the distribution of controlled substances did not directly cause any of Plaintiff's injuries, and cannot therefore be the basis of standing for civil RICO purposes.  Similarly, the sexual assault on another officer cannot be said to have directly caused injury to Plaintiff.  As to the threats to Plaintiff's job, such threats do not constitute racketeering activity and cannot provide Plaintiff with standing.  The same is true of the disciplinary incident, in which Plaintiff was sent home from work and yelled at in front of his family.  However, one type of conduct alleged by Plaintiff could be considered racketeering activity proximately causing injury, if he can prove it occurred.  That conduct is the threats of physical violence against Plaintiff, and the actual physical assault upon him.  Assault alone is not a racketeering activity.  *See Park South Assocs. v. Fischbein*, 626 F.Supp. 1108, 1114 (S.D.N.Y. 1986).  However, Plaintiff has alleged these threats of bodily injury and the infliction of injury upon him were motivated by Defendants' anger at him for informing an FBI agent about the violations of law being committed by Defendants.  Such retaliatory conduct arguably violates 18 U.S.C. § 1513, which proscribes the infliction of bodily injury, or threats to do the same, upon a person with the intent to retaliate against that person for providing information relating to the commission of a federal offense.  In turn, a violation of § 1513 constitutes a racketeering activity under § 1961(1).  Therefore, Plaintiff appears to have standing to bring a RICO action for any

8

injuries he has suffered as a direct result of Defendants' alleged violations of § 1513.[3]  The Court will therefore determine whether his complaint has adequately stated such a cause of action.

    2.       Pattern of Racketeering Activity under 18 U.S.C. § 1962(c)

    a. Enterprise:  RICO § 1961(4) defines an "enterprise" as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity...."  RICO applies to both legitimate enterprises and criminal enterprises with no legitimate dimension.  United States v. Turkette, 452 U.S. 576, 591 (1981).  To prove the existence of an enterprise Plaintiff must show that an entity or a group of persons are 1) associated for a "common purpose of engaging in a course of conduct;" 2) constitute an "ongoing organization, formal or informal...[in which] various associates function as a continuing unit;" and 3) constitute "an entity separate and apart from the pattern of activity in which it engages." Id. at 583.  Further, "liability depends on showing that [the Defendants] conducted or participated in the conduct of the enterprise's affairs, not just their own affairs." Reves v. Ernst & Young, 507 U.S. 170, 185 (1993) (cited in  Richmond v. Nationwide Cassel L.P., 52 F.3d 640, 645 (7th Cir. 1995) (finding that the plaintiff failed to adequately allege enterprise because plaintiff's allegations concerned only the defendants' conduct, not specifically the conduct of the enterprise)).

---

[3]Although it need not be specifically addressed at this time, the Court notes it is unlikely Plaintiff would be able to prove that his "constructive discharge" qualifies as an injury caused by the racketeering activity.  *See Hecht*, 897 F.2d at 24 ("[T]he purpose of civil RICO liability does not extend to deterring any illegal act such as retaliatory firings for which there are state and common law remedies").

Defendants contend that Plaintiff has pled no facts sufficient to satisfy the enterprise element. Plaintiff alleges that the City of Belen, the BPD and Plaintiff's supervisors were conspiring, promoting and covering up illegal activity by the BPD. If Plaintiff is alleging that the BPD is functioning as an enterprise through the activities of the Defendants, Plaintiff lacks any details regarding this element. This Court agrees with Defendants that Plaintiff must allege some factual basis to show how the Defendants are functioning as a unit and not as individuals. Plaintiff has not alleged facts sufficient to satisfy the enterprise element under § 1962(c).

b. Racketeering Activity: As discussed above, RICO § 1961(1) defines "racketeering activity" by providing an extensive list of activities that constitute the predicate acts of racketeering under RICO. The activities include: "any act 'chargeable' under several generically described state criminal laws, any act 'indictable' under numerous specific federal criminal provisions...and any 'offense' involving bankruptcy or securities fraud or drug-related activities that is 'punishable' under federal law." Sedima, S.P.R.L. v Imrex Co., 473 U.S. 479, 482-82 (1985) (quoting 18 U.S.C. § 1961(1)). Also as discussed above, Plaintiff has alleged facts that would be sufficient to establish the racketeering activity element under § 1962(c), such as the sexual assault, the participation in drug distribution, and the possible violations of 18 U.S.C. § 1513.

c. Pattern: To establish a "pattern" of racketeering activity, the Plaintiff must show that 1) the racketeering predicate acts are related, and 2) the acts pose a threat of continued criminal activity. SIL-FLO, Inc. v. SFHC, Inc., 917 F.2d 1507, 1516 (10th Cir. 1990) (citing H.J., Inc. v. Northwestern Bell Tel. Co., 492 U.S. 229, 236 (1989)). Schemes that are isolated or carried out

10

to accomplish "one discrete goal" or "directed at one individual with no potential to extend to other persons or entities" are not sufficient to establish a pattern. SIL-FLO, Inc., 917 F.2d at 1516 (quoting Phelps, 886 F.2d at 1273). However, a pattern does not require "more than one scheme, although conduct involving multiple schemes will likely be more probative." SIL-FLO, Inc., 917 F.2d at 1516 (citing H.J., Inc., 492 U.S. at 240; Phelps v. Wichita Eagle-Beacon, 886 F.2d 1262, 1273 (10th Cir. 1989)).

In this case, Plaintiff has alleged corruption within the BPD, which may constitute a "scheme." He has also alleged a number of specific examples of conduct executed in support of that scheme, including the involvement in narcotics trafficking. However, his allegations fall short of satisfying the pattern requirement. The alleged scheme or schemes must meet the requirement of continuity. SIL-FLO, Inc., 917 F.2d at 1516. A plaintiff must satisfy either closed-ended and open-ended continuity. To establish close-ended continuity, the plaintiff must show a "'closed period of repeated conduct'" Id. (quoting H.J., Inc., 492 U.S. at 241-242). The conduct requires "'a series of related predicates extending over a substantial period of time. Predicate acts over a few weeks or months' are insufficient." SIL-FLO, Inc., 917 F.2d at 1516 (quoting H.J., Inc., 492 U.S. at 242). To establish open-ended continuity, the plaintiff must show "'past conduct that by its nature projects into the future with a threat of repetition.'" SIL-FLO, Inc., 917 F.2d at 1516 (quoting H.J., Inc., 492 U.S. at 241). "Open-ended continuity requires a clear threat of future criminal conduct related to past criminal conduct." SIL-FLO, Inc., 917 F.2d at 1516 (citing H.J., Inc., 492 U.S. at 241).

In this case, Plaintiff needs to provide more of a factual basis to establish the pattern element, and especially the continuity requirement of that element. Plaintiff's present allegations are insufficient to establish the pattern element under § 1962(c).

### 3. Conspiracy under 18 U.S.C. § 1962(d)

In order to state a claim for conspiracy under § 1962(d), if Plaintiff intended to state such a claim, Plaintiff must allege facts sufficient to prove "the existence of a common plan, explicit or implicit, among the conspirators." See United States v. Ruiz, 905 F.2d 499, 505 (1st Cir. 1990). Further, Plaintiff must show a factual basis for the existence of "a conscious agreement among the defendants...." Hecht v. Commerce Clearing House, Inc., 897 F.2d 21, 26 n.4 (2nd Cir. 1990) (citing Rose v. Bartle, 871 F.2d 331, 366 (3rd Cir. 1989)). Plaintiff does not allege facts sufficient to state a claim under Fed. R. Civ. P. 12(b)(6) in this regard, as Plaintiff has alleged no facts that show a conscious agreement between any specific defendants.

### C. Request for Leave to Amend the Complaint

Under Fed. R. Civ. P. 15, "a party may amend the party's pleading only by leave of the court or by written consent of the adverse party; and leave shall be freely given when justice so requires." However, leave to amend may be denied under 12(b)(6) and "a court may dismiss sua sponte when it is patently obvious that the plaintiff could not prevail on the facts alleged, and allowing him an opportunity to amend his complaint would be futile." Hall v. Bellmon, 953 F.2d 1106, 1109-10 (10th Cir. 1991) (citing McKinney v. Oklahoma, 925 F.2d 363, 365 (10th Cir. 1991)).

Defendants argue that Plaintiff should be denied leave to amend based on futility. However, in accord with the Tenth Circuit decisions, this Court recognizes that "[d]ismissal is a harsh remedy to be used cautiously so as to promote the liberal rules of pleading while protecting the interests of justice." Cayman Exploration Corp. v. United Gas Pipe Line Co., 873 F.2d 1357, 1359 (10th Cir. 1989). Further, there is a "'powerful presumption against rejecting pleadings for failure to state a claim.'" Maez v. Mountain States Tel. And Tel., Inc., 54 F.3d 1488, 1496 (10th Cir. 1995) (quoting Morgan v. City of Rawlins, 792 F.2d 975, 978 (10th Cir. 1986)). In this case, as discussed above, Plaintiff has sufficiently alleged standing to bring a civil RICO claim, as well as several predicate acts under that statute. Plaintiff has also had the benefit of discovery, which is almost closed, and should be able to determine whether he can actually state a RICO claim, within the strictures of Rule 11. Therefore, in the interest of justice, Plaintiff should be given leave to amend his complaint to cure its deficiencies, if he can allege sufficient facts to do so.

## ORDER

Based on the foregoing,

IT IS HEREBY ORDERED that Defendants' Motion to Dismiss is DENIED.

IT IS FURTHER ORDERED that Plaintiff's request for leave to amend is hereby GRANTED. Plaintiff shall file a first amended complaint consistent with this Opinion and Order within thirty (30) days of the date of this order. If Plaintiff fails to timely file such an amended complaint, Count II of his current complaint will be dismissed.

DATED this 25th day of January, 2001.

_____
BRUCE D. BLACK
UNITED STATES DISTRICT JUDGE

**ATTORNEYS**

**For Plaintiff:**
Donald G. Gilpin
James A. Mungle
820 2d Street, N.W.
Albuquerque, New Mexico 87102

**For Defendants City of Belen, Romero, and Valdez:**
Virginia Anderman
Andrew M. Sanchez
Miller, Stratvert & Torgerson, P.A.
P.O. Box 25687
Albuquerque, New Mexico 87125

**For Defendant Zamora:**
Christian C. Doherty
Cuddy, Kennedy, Hetherington, Albetta & Ives, LLP
P.O. Box 4160